**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-20200
Summary Calendar
_____


MICHAEL WILTING,

                                            Plaintiff - Appellant,

VERSUS

PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY; AMERITECH CORP;
FARMERS INSURANCE COMPANY; MID-CENTURY INSURANCE COMPANY OF TEXAS;
TEXAS FARMERS INSURANCE COMPANY; FARMERS TEXAS COUNTY MUTUAL
INSURANCE COMPANY,

                                            Defendants - Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas
(H-99-CV-4396)
_____

August 2, 2000

Before JOLLY, SMITH and DUHÉ, Circuit Judges.

PER CURIAM:[1]

    Michael Wilting ("Wilting") appeals the district court's Fed.
R. Civ. P. 12(b)(6) dismissal and grant of summary judgment in
favor of the Defendants.  We affirm.

## I. BACKGROUND

    The parties do not dispute the facts of this case.  While

---

    [1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

residing in Illinois in 1995, Michael Wilting established his residential telephone service with Ameritech Corporation ("Ameritech"). Late in 1997 Wilting moved and a dispute arose as to the amount of his final Ameritech bill. Wilting filed a lawsuit, which was later settled, in Texas state court against Ameritech.

As part of the settlement, Ameritech promised that no information regarding Wilting's telephone account would be reported to any credit reporting agency or bureau. In September 1999, Ameritech obtained a copy of Wilting's credit report, which revealed that two collection agencies employed by Ameritech had failed to remove information concerning Wilting's telephone account. Ameritech contacted the collection agencies and requested that they remove this information from Wilting's credit report.

In October 1999, Wilting contacted Progressive County Mutual Insurance Company ("Progressive") and Farmers Insurance Company ("Farmers"), and requested quotations for automobile insurance. Subsequently, each insurer collected information regarding Wilting's driving record and his credit history. They then both offered to provide insurance to Wilting.

Wilting then filed a suit seeking injunctive relief and monetary damages against Ameritech, Farmers, and Progressive alleging that each defendant unlawfully obtained his credit report. The district court granted the insurers' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The court also granted Ameritech's

2

motion for summary judgment.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the party opposing the motion. See Hall v. Gillman, Inc., 81 F.3d 35, 36-37 (5th Cir. 1996). We review a Fed. R. Civ. P. 12(b)(6) dismissal de novo. Such a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. Conley v. Gibson, 335 U.S. 41, 45-46 (1957).

## III. DISCUSSION

A.    Claim Against Ameritech

Wilting contends that Ameritech violated the settlement agreement and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq., ("the Act") when it obtained his credit report. The Act governs the reporting of consumer credit information and outlines the exclusive permissible uses of credit reports. Under the Act, a consumer reporting agency may furnish a consumer report to a person who intends to use the information for a legitimate business need in connection with a business transaction that is initiated by the consumer. 15 U.S.C. § 1681b(a)(3)(F)(i).

Wilting initiated a business transaction with Ameritech when he ordered telephone service. Pursuant to the settlement agreement, Ameritech clearly had a legitimate business need to obtain Wilting's credit report and make certain that no adverse

notations appeared on the report.

Wilting argues that the Act only allows a creditor to obtain a consumer credit report on "existing accounts" and not for previous accounts. Appellant's Brief at 28 (exhibiting letter from Ronald G. Isaac, Attorney, U.S. Federal Trade Commission, to Don Gowen, Senior Vice President, Security Mutual Financial Services, Inc. (April 29, 1999)). At the time when Ameritech obtained his credit report there was no existing business relationship because Wilting had terminated his telephone service with Ameritech.

We note that neither the Act nor the FTC's commentary on the Act suggests that a report may only be permissibly obtained during particular points in the parties' relationship. Moreover, although Wilting had terminated telephone service at the time in question, Ameritech obtained the credit report to comply with the settlement agreement by ensuring that no adverse notations relative to business dealings between the parties remained on Wilting's credit report. The settlement agreement related directly to Wilting's Ameritech account. There was simply no other way for Ameritech to abide by the agreement and remove any adverse references from Wilting's account than by checking a credit report. We conclude that Ameritech permissibly obtained Wilting's credit report pursuant to the Act.

II. Claim against Progressive and Farmers

Wilting also contends that Progressive and Farmers violated the Act when they obtained his credit report. The Act permits a

4

party to obtain a credit report if it will use the information in connection with the "underwriting" of insurance. 15 U.S.C. § 1681b(a)(3)(C). Although "underwriting" is not defined in the Act, the FTC, in its commentary, defines "underwriting" as:

> An insurer may obtain a consumer report to decide whether or not to issue a policy to the consumer, the amount and terms of coverage, the duration of the policy, the rates or fees charged, or whether or not to renew or cancel a policy, because these are all 'underwriting' decisions. FTC Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600, App.

Wilting argues that neither insurer was engaged in underwriting because he did not ask the insurers to issue a policy. He only requested a quotation. We conclude that the insurers did act as underwriters. In order to "decide whether or not to issue a policy" the insurers had to obtain a credit report to weigh the risks presented by the consumer. They could not decide whether to issue a policy without a credit report and an essential part of providing a quotation is deciding whether or not to issue a policy. Therefore, the insurers properly obtained Wilting's credit report as authorized by the Act.

For these reasons, we affirm.

AFFIRMED.

5